# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

EDWARD CHAMBERS,

Civil No. 04-4887 (JRT/JSM)

Plaintiff,

v.

**MEMORANDUM OPINION
AND ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

SIMONDELIVERS, INC.,

Defendant.

Eric D. Satre, **CONNOR SATRE & SCHAFF**, 3440 Federal Drive, Suite 120, Eagan, MN 55122, for plaintiff.

Tamika R. Nordstrom, **BLACKWELL IGBANUGO PA,** 3601 West 76th Street, suite 250, Minneapolis, MN 55435, for defendant.

Plaintiff Edward Chambers brought this action against his former employer after he was terminated in February 2001. Chambers alleges that defendant SimonDelivers, Inc. discriminated against him on the basis of his race, and retaliated against him after he complained about the alleged racial discrimination. Defendant argues that Chambers was terminated for well-documented poor performance, and defendant is therefore entitled to summary judgment on all of plaintiff's claims. For the reasons discussed below, defendant's motion for summary judgment is granted.

## BACKGROUND

On September 19, 2000, Chambers began working with SimonDelivers, Inc. through a temporary service agency.  Defendant ultimately offered Chambers a permanent position.  As a permanent employee, Chambers was assigned work in the freezer/sub-freezer under a new supervisor, Sandy Padilla.  The freezer was kept at zero degrees and the sub-freezer was kept at sub-zero temperatures.  In his deposition, Chambers testified that he was the only person who was assigned to work in the sub-freezer for whole shifts.

Chambers complained to the General Manager, Chris Meyer, about being forced to work full shifts in the sub-freezer.  Chambers testified that at first he did not think that Padilla's decision to keep him in the sub-freezer was racially motivated, but over he time he began to believe it.

Chambers also testified that Padilla purposefully sabotaged his work.  His job required him to take items out of the freezer and put them in totes on a line.  He testified that he saw Padilla go down the line and remove items from his tote and then complain to him that he did not fill the tote correctly.  When he asked her if she removed things from the tote, he testified that she admitted to it, and then looked around and said, "I'm sick of your attitude.  I don't even want you here.  I wish they would just put your nigger ass somewhere else."  Defendant denies that this event occurred but does not offer conflicting testimony.

On several occasions, Chambers spoke with Meyer about the problems he was having with Padilla, and the last two times he notified Meyer that the problem was a race

issue. Chambers testified that he told Meyer that Padilla called him a "nigger," but defendant asserts that Chambers did not tell anyone at SimonDelivers about the racial epithet until after his termination. Chambers testified that Padilla told Chambers she did not appreciate that he complained to Meyer.

Padilla reported problems with Chambers' work performance via email four times in early January. According to company documents, the Team Leader, Deborah Tillman, met with Chambers and Padilla on January 24, 2001, and discussed the performance issues and complaints of racial discrimination. Another internal document that states that Tillman followed up on the meeting by observing Chambers' work performance on January 30. She noticed the line backing up, and after speaking with Chambers, Tillman suggested that Chambers work in the cooler for a few days to work on performance issues. The supervisor in the cooler area was Arely Garcia, who is a person of color. According to a company document, Garcia reported on February 5, 2001, that Chambers worked too slowly. Chambers testified that he never met Deborah Tillman and never received written or verbal counseling about his job performance, as required by defendant's discipline guidelines.

Defendant fired Chambers on February 5, 2001. Defendant conducted an internal investigation of Chambers' termination at his request. Defendant interviewed Chambers' co-workers and concluded that the termination was warranted. According to defendant's report, the co-workers generally expressed that Chambers talked too much and was too slow.

## ANALYSIS

### I.    Standard of Review

Summary judgment is appropriate where the moving party establishes that there is no genuine issue of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When considering a motion for summary judgment, the moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980).  However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise show that there is a genuine issue for trial.  *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

**II.    Racial Discrimination Claim**

Chambers argues that he was forced to work whole shifts in the sub-freezer and defendant terminated his employment because he is black.

The parties agree that the Court should analyze plaintiff's discrimination claims under the guidelines set forth in *McDonnell-Douglas v. Green*, 411 U.S. 792 (1973).  To make a prima facie showing of race discrimination in a case such as this, the plaintiff must show that he was a member of a protected group, he was performing his job at a level that met his employer's legitimate expectations, he suffered an adverse employment action, and there are facts that permit an inference of discrimination.  *Taylor v. Sw. Bell Tel. Co.*, 251 F.3d 735, 740 (8th Cir. 2001).    If this prima facie case is made out, the burden then shifts to the employer to identify a legitimate reason for the adverse employment action.  *See McDonnell Douglas Corp.*, 411 U.S. at 802.  The burden then shifts back to the employee to show that the articulated reason was a pretext.  *See id.* at 804.

It is undisputed that Chambers is a member of a protected class and suffered an adverse employment action.  The Court must determine whether Chambers has met his burden in showing he was qualified to maintain his position and that the adverse employment action occurred under circumstances that give rise to an inference of discrimination.

The record shows a consistent pattern of unacceptable performance by Chambers.  Chambers argues that there is a dispute of material fact as to whether Chambers was qualified, and points to the deposition testimony of a co-worker for support.  Joseph

Witherspoon testified that Chambers was a "good worker," but Witherspoon explained that he believed this because Chambers came to work every day.  Witherspoon also testified that Chambers was generally slow on the line and spent a lot of time talking. The Court concludes that Witherspoon's testimony does not create a dispute of material fact.  Rather, it supports defendant's position that Chambers did not meet the company's legitimate expectations because of his slow pace.

To create an inference of racial discrimination, Chambers must show that similarly situated employees, who are not members of the protected group, were treated differently.  *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000).  Chambers alleges that he was the only employee who was forced to work whole shifts in the sub-freezer, but he offers no evidence that this was because of his race.  Notably, Chambers has not identified any white workers with similar performance problems who were allowed to rotate in and out of the sub-freezer.  On the other hand, the record indicates that Witherspoon, who is also black, was allowed to rotate in and out of the sub-freezer.

Rather than provide evidence of a similarly situated worker who was treated differently, Chambers argues that Padilla's alleged and disputed use of the racial epithet is circumstantial evidence of the company's discriminatory behavior and her discriminatory intent.  Assuming that Padilla did use the racial epithet, this isolated comment without more does not give rise to an inference of racial discrimination by defendant.  The comment had no connection to the sub-freezer issue, and Chambers has offered no evidence that Padilla made the final decision to terminate Chambers.  Indeed, the undisputed evidence shows that Tillman made the decision, and that she made it only

after Chambers was transferred to another department, where a different supervisor, Garcia, articulated the same concerns about his slow pace that had been expressed by Padilla.

There is no independent evidence, other than plaintiff's unsubstantiated allegations, that defendant treated him differently because of his race. *See, e.g.*, *Pony Computer v. Equus Computer Sys. of Missouri, Inc.*, 162 F.3d 991, 997 (8th Cir. 1998) ("Summary judgment is appropriate where there is no independent evidence, other than the petitioner's unsubstantiated allegations."). Therefore, the Court concludes that Chambers failed to make out a prima facie case of racial discrimination.

## III.    Retaliation Claim

To establish a prima facie case of retaliation, Chambers must show that he engaged in protected conduct, he suffered an adverse employment action, and the adverse action was causally linked to the protected conduct. *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 707 (8th Cir. 2005). The parties do not dispute that Chambers engaged in protected conduct when he complained about alleged racial discrimination by Padilla, and that Chambers suffered an adverse employment action. The issue is whether Chambers has shown a causal connection between these events.

The Eighth Circuit holds that "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc). In some cases, however, the Eighth Circuit has held close

temporal proximity to be sufficient as a matter of law to demonstrate causal connection. *See, e.g., Couty v. Dole*, 886 F.2d 147, 148 (8th Cir. 1989).

The parties dispute the exact date of the protected activity, but both accounts indicate that Chambers was terminated within two weeks of the protected activity.  While the temporal proximity is very close, intervening events erode any causal connection between his protected conduct and his termination.  *See Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 852 (8th Cir. 2005) (concluding that the causal connection was eroded because the employer was in a period of layoffs and employee had skipped several days of work in the period between the protected conduct and layoff).  Defendant provides documentation that on January 30, 2001, Tillman observed that the line was backed up in the zone in which Chambers was working.  Tillman then decided to transfer Chambers into the cooler area to work under a different supervisor, Garcia, who also observed performance issues.[1]  Given the well-documented performance problems, the Court concludes that no reasonable fact-finder could conclude that there is a causal connection between plaintiff's protected activity and his termination.

---

[1] Chambers denies that his performance was ever inadequate.  Rather, Chambers asserts that Garcia and Padilla were friends, and that Garcia purposefully targeted him for criticism, just like Padilla.  Whether or not his poor performance review from Garcia was justified is irrelevant here.  The important fact is that Chambers has offered no evidence that defendant's decision to terminate him was based on his protected activity.

The Court does not find that there is an absence of factual questions in this case.[2]
Rather, the Court concludes that all outstanding questions of fact are immaterial.  *See
Taylor v. White*, 321 F.3d 710, 715 (8th Cir. 2003).  After giving Chambers the benefit of
all reasonable inferences to be drawn from the underlying facts in the record, he still has
not established a prima facie case on his claims of racial discrimination and retaliation.
Therefore, defendant's motion for summary judgment is granted.

## ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS
HEREBY ORDERED** that defendant's Motion for Summary Judgment [Docket No. 18]
is **GRANTED**.

## LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:     June 30, 2006                         _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                                    United States District Judge

---

[2] The parties devote substantial briefing to the issue of whether plaintiff completed the
company's 60-day introductory period before he was terminated.  Defendant's official reason for
terminating plaintiff was his "inability to meet performance expectations during [the]
introductory period."  Plaintiff maintains that he completed the introductory period on November
30, 2000, so this cannot be the true reason for his termination on February 5, 2001.  The Court
finds that it is immaterial whether or not plaintiff was terminated during the introductory period.
Defendant has offered abundant evidence that plaintiff was not meeting performance
expectations, and plaintiff has not offered any evidence that contradicts this assessment.  Even
assuming defendant is wrong about the dates of the introductory period, this does not create an
inference of racial discrimination or retaliation.